JOURNAL ENTRY AND OPINION
Appellant, Vicki Krakowski, is appealing her conviction for aggravated menacing. For the following reasons, we affirm.
Brenda Thomas testified that she lives one house away from appellant. On February 11, 1999, appellant's roommate, Cynthia banged on Thomas's door. Cynthia accused Ms. Thomas of stealing aluminum siding from the house in between them. Ms. Thomas told Cynthia to go home, and she turned around to shut the door. Cynthia pulled Thomas' hair. Thomas punched Cynthia in the face. Appellant came out of her house and pulled Cynthia to their house.
Thomas further testified that she and appellant were yelling back and forth from their respective front porches. Cynthia came out of the house and handed appellant a gun. Appellant had the gun behind her back. Appellant asked Thomas, if she could catch a bullet quick.
The 911 tape revealed that at 6:35 p.m., Thomas called the police and said that Cynthia was banging on the door.
Keith Clark testified that he lives across the street from appellant. He heard appellant say to Thomas, are you fast enough to catch a bullet?
Officer Rauscher testified that when he arrived on the scene at 7:00 p.m., he saw appellant tuck something in her waistband. Appellant ran into her house. He heard a stove slam shut. The police recovered a gun from the stove. He did not see any injuries on appellant. Appellant did not say she was injured.
Appellant testified that she and Cynthia were in their driveway when Ms. Thomas, Thomas's husband and two children, Ms. Bayline, and Keith Clark approached them. Ms. Thomas and her group were yelling insults at them. Appellant went inside to call the police. She heard a ruckus, hung up the phone and went back outside. Ms. Thomas and Ms. Bayline were beating Cynthia in appellant's driveway. Appellant went to help Cynthia. Mr. and Ms. Thomas beat appellant. Ms. Thomas spit on appellant and said, I have AIDS, I hope you get it.
Appellant further testified that she pulled Cynthia onto their front porch. Thomas was still in appellant's driveway. Thomas told appellant to come down from the porch so she could cut her throat. Thomas also threatened to burn down her home. Appellant called the police again. Appellant put a gun in the waistband of her pants, and put it in the house when the police came.
Appellant told the police she was injured. She had pictures taken two weeks after the fight, showing bruises on her leg and eyes. She was treated for a broken wrist two weeks after the fight. Appellant denied threatening Thomas with the gun.
The 911 tape reveals that appellant called at 6:51 p.m., stating that Ms. Thomas threatened to slit her throat. Appellant said it was, not a real emergency, but I would like a stop to it. Appellant testified that this was the second time she called, then corrected herself, saying it was the first time she called 911. There was no recording in evidence of another phone call appellant made to 911.
 I.
Appellant's first assignment of error states:
 THE STATE VIOLATED APPELLANT KRAKOWSKI'S EQUAL PROTECTION RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTIONS 5 AND 10 OF THE OHIO CONSTITUTION WHEN IT EXERCISED ITS PEREMPTORY CHALLENGES BY STRIKING TWO AFRICAN-AMERICANS, THEREBY ENGAGING IN RACIALLY DISCRIMINATORY ACTS.
The prosecutor used two peremptory challenges to excuse two African American venire members, Mr. Luke and Ms. Gunter. The record does not indicate how many African Americans were venire members. The prosecutor's brief states that the challenged jurors were replaced by African American jurors. In oral argument, the prosecutor stated that the brief was incorrect, and all the jury members were white. The record itself does not indicate whether or not any African Americans were on the jury panel. The prosecutor had no further objections to the panel, waiving his remaining peremptory challenge.
In voir dire, Ms. Gunter stated that she had allergies and laryngitis, which were aggravated by the air in the courtroom. When asked if she could promise to consider the defendant not guilty because there has not been any evidence yet, she replied, I don't know.
Mr. Luke was asked whether he understood that the fact that the defendant was in court does not mean she did anything wrong. Mr. Luke replied, no. After the prosecutor asked whether the jurors felt they could approach this case with an open mind, Mr. Luke stated that his cousin was a police officer. Mr. Luke ultimately stated that he could be fair.
The trial judge did not ask the prosecutor his reasons for the peremptory challenges. The judge stated there was no racial element to the case. The defendant was white and the victim was black.
It is a violation of the equal protection clause to exclude jurors on the basis of race. Batson v. Kentucky (1986),476 U.S. 79, 90 L.Ed.2d 69, 106 S.Ct. 1712. The defendant must present a prima facie case that the circumstances raise an inference of discrimination. Id., State v. Hernandez (1992), 63 Ohio St.3d 577. The excluded jurors need not be the same racial group as the defendant. Powers v. Ohio (1991), 499 U.S. 400, 113 L.Ed.2d 411,111 S.Ct. 1364. Once the defendant establishes a prima facie case, the burden shifts to the state to articulate a racially neutral reason for excusing the venire member. Id. Once the prosecution advances a non-discriminatory reason, the trial court must decide whether the defendant carried his burden to prove purposeful discrimination. Batson, State v. Hernandez, supra.
Only if the trial court determines, in its discretion, that the defendant has shown an inference of discrimination, does the burden shift to the prosecution to articulate a race neutral reason for excluding the prospective juror or jurors. State v. Tillman (1997),119 Ohio App.3d 449. A prima facie case may be made by showing that members of a recognizable racial group were excluded and that other facts and circumstances raise an inference that the prosecutor excluded potential jurors on account of their race. See Batson,supra; State v. Hernandez, supra. The trial court should consider all the relevant circumstances. Batson, supra; Hicks v.Westinghouse Materials Co. (1997), 78 Ohio St.3d 95, 98.
 For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.
Batson, supra at 1723.
In this case, the prosecutor challenged two African American jurors. The record does not indicate whether or not any African American jurors were on the jury panel. The prosecution's statement in oral argument concerning the racial composition of the jury is not a part of the record, and technically should not be considered by this court. See Walker v. Mobil Oil Corp. (1976), 45 Ohio St.2d 19,21; H D Steel Service, Inc. v. Weston, Hurd, Fallon, Paisley Howley (July 23, 1998), Cuyahoga App. No. 72758, unreported;State v. Houston (Feb. 26, 1998). Cuyahoga App. No. 72383, unreported. The fact that the state did not exclude all members of a particular racial group does not prevent a defendant from establishing a prima facie case of discrimination, however. Statev. Stephens (1998), 126 Ohio App.3d 540, 547.
The prosecutor did not make any statements during voir dire that were reflective of a discriminatory motive. There was no reason why the prosecutor would want to exclude black jurors, as the defendant was white and the victim was black. There were several legitimate reasons on the record to exclude Mr. Luke and Ms. Gunter. Under these circumstances, we can not say that the trial court abused its discretion in finding that appellant did not demonstrate a prima facie case of discrimination.
Accordingly, this assignment of error is overruled.
 II.
Appellant's second assignment of error states:
 THE TRIAL COURT ERRED WHEN IT REFUSED TO INSTRUCT THE JURY ON SELF DEFENSE OR ALLOW EVIDENCE REGARDING PRIOR ACTS OF VIOLENCE BY THE ALLEGED VICTIM WHERE SUCH ACTS WOULD ESTABLISH THE DEFENSE OF SELF-DEFENSE TO AGGRAVATED MENACING THUS VIOLATING BOTH THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION 10
OF THE OHIO CONSTITUTION.
It is questionable whether the affirmative defense of self-defense is available for a charge of aggravated menacing. Self defense is a privilege to use force which is reasonably necessary to repel an attack. State v. Williford (1990), 49 Ohio St.3d 247,249. Appellant did not use any force.
In any case, the trial court need not instruct the jury on self-defense where the evidence was insufficient to support the instruction. State v. Palmer (1997), 80 Ohio St.3d 543, 564. If no reasonable mind could conclude that appellant acted in self-defense, she was not entitled to the instruction. See Murphy v. CarrolltonMfg. Co. (1991), 61 Ohio St.3d 585, 591.
To prove self-defense, the following elements must be shown: (1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant has a bona fide belief that he was in imminent danger of harm and that his only means of escape from such danger was in the use of such force; and (3) the defendant must not have violated any duty to retreat or avoid the danger. State v. Williford (1990), 49 Ohio St.3d 247, 249. A homeowner may use such force as is reasonably necessary in defense of his property. See Goldfuss v. Davidson (1997), 79 Ohio St.3d 116,124. The right to use a lethal weapon does not arise until there are reasonable grounds to believe that it is necessary to kill, or to wound, to protect life or to prevent great bodily injury. SeeState v. Daugherty (1971), 26 Ohio App.2d 159, 162; see alsoGoldfuss, supra.
A person has no duty to retreat from his home, including the frontporch. See Wiliford, supra. A person has a duty to retreat from their driveway. See State v. Thrower (Nov. 13, 1986), Cuyahoga App. No. 51280, unreported.
Appellant did not have a reasonable belief of imminent harm to her property or herself. Thomas told her to come down off her front porch, so she could cut her throat. Thomas' threat was conditional upon appellant coming off the porch. Thomas was in the driveway. Appellant did not have a reasonable belief of imminent harm, as long as she stayed on the porch. Additionally, appellant told the 911 operator that it was not an emergency.
No reasonable trier of facts could find that appellant had a reasonable belief the house was under imminent attack. There was no evidence that Thomas had items on her person which she could use to burn down appellant's house. Again, the only 911 call in evidence indicates appellant did not feel it was an emergency.
Also, appellant testified that she did not make any threats. An argument of self-defense would be contrary to the appellant's testimony. If appellant's testimony is believed, appellant never formed the subjective belief that it was necessary to threaten Thomas with the gun in order to defend herself or her property.
The trial court did not err in denying appellant's motion for an instruction on self-defense. The trial court properly excluded evidence of prior violent acts by the victim, because self-defense was not an issue. See Evid. R. 404(A)(2).
Accordingly, this assignment of error is overruled.
Appellant's third assignment of error states:
 III. THE TRIAL COURT DID NOT ERR IN IMPOSING A FINE IN ADDITION TO SENTENCING VICKI KRAKOWSKI TO A TERM OF IMPRISONMENT.
R.C. 2929.22(E) states in pertinent part:
 The court shall not impose a fine in addition to imprisonment for a misdemeanor sentence unless a fine is specifically adapted to deterrence of the offense or correction of the offender.
Appellant must come forward with evidence to rebut the presumption that the trial court considered the sentencing criteria. State v.Keaton (1996), 113 Ohio App.3d 696, 708, citing State v. Cyrus
(1992), 63 Ohio St.3d 164, 166; see also City of Cleveland v.Underwood (Jan. 6, 2000.), Cuyahoga App. No. 76584, unreported.
There is no transcript of the sentencing hearing in the record. Without a complete record, we must presume the trial court found that the fine was specially adapted to deterrence or correction of the offender, or one of the other factors set out in R.C.2929.22(E). City of Broadview Hts. v. Claren (May 27, 1999), Cuyahoga App. No. 74227, unreported, appeal dismissed (1999),86 Ohio St.3d 1487.
Accordingly, this assignment of error is overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cleveland Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CORRIGAN, J., AND PORTER, J., CONCUR.
 _______________________________ ANN DYKE, ADMINISTRATIVE JUDGE